UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURENCE WALKER, ) | |
| ) | |
| Plaintiff, ) | CASE NO.: 18-CV-5240 |
| ) | |
| vs. ) | JUDGE: CHANG |
| ) | |
| VINCENT SCACCIANOCE, and ) | |
| COUNTY OF COOK, ) | |
| ) | |
| Defendants. ) | |

**SECOND AMENDED COMPLAINT**

NOW COMES the Plaintiff, LAURENCE WALKER ("Plaintiff" or "WALKER"), by and through his court-appointed counsel, JOHNSON & KROL, LLC, and for his Second Amended Complaint against the Defendants VINCENT SCACCIANOCE, INC. ("SCACCIANOCE") and COUNTY OF COOK ("COOK COUNTY") (collectively "Defendants"), states as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 42 U.S.C. § 1983 and seeks redress and relief for the violation, under color of state law, of WALKER's clearly established rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015); *Miranda v. Cty of Lake*, 900 F.3d 335 (7th Cir. 2018).

2. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), respectively.

3. The Northern District of Illinois is the proper venue pursuant to 28 U.S.C. § 1391 because the events giving rise to this civil action occurred at the Cook County Department of Corrections ("CCDOC") located within the Northern District of Illinois.

## PROCEDURAL HISTORY

4. On July 31, 2018, the Clerk of the Court received WALKER's original Complaint against the Defendants. (Docket No. 1).

5. On April 2, 2019, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), this Court conducted an initial review of WALKER's original Complaint, dismissed the Complaint without prejudice, and granted WALKER permission to propose an amended complaint. (Docket No. 30).

6. On April 1, 2019, WALKER submitted a Motion for Leave to File an Amended Complaint (Docket No. 31) and Amended Complaint (Docket No. 32), which were received by the Clerk of the Court on April 5, 2019.

7. On April 9, 2019, having received the Court's Order of April 2, 2019 (Docket No. 30) after the Amended Complaint (Docket No. 32) was mailed to the Court, WALKER filed a Petition to Dismiss the Amended Complaint (Docket No. 34) and a second Motion for Leave to File an Amended Complaint (Docket No. 35).

8. On April 25, 2019, WALKER submitted another Amended Complaint (Docket No. 39), which was received by the Clerk of the Court on April 30, 2019.

9. On May 9, 2019, this Court denied WALKER's Motions for Leave to File an Amended Complaint as unnecessary in light of the April 2, 2019 order; granted leave to replace the earlier Amended Complaint (Docket No. 32) with the Amended Complaint (Docket No. 39); conducted a review of the Amended Complaint (Docket No. 39) pursuant to 28 U.S.C. 1915A(a); determined that the Amended Complaint sufficiently stated a failure-to-protect claim; and ordered the Clerk of the Court to file the Amended Complaint and issue a Summons to SCACCIANOCE.

10. On August 21, 2019, this Court appointed the undersigned counsel to act as WALKER's attorney in this matter. (Docket No. 61).

11. On November 22, 2019, this Court entered an Order setting the Rule 16(b) deadline to amend pleadings on February 28, 2020.

**PARTIES**

12. WALKER was at all relevant times mentioned herein an inmate in the custody of the CCDOC.

13. Subsequent to the relevant events giving rise to this lawsuit, WALKER was incarcerated at Hill Correctional Center, within the Illinois Department of Corrections from approximately September 21, 2018, through November 1, 2019, when he was released on mandatory supervised release; Walker currently resides in Cook County, Illinois.

14. Defendant SCACCIANOCE is an employee of COOK COUNTY who, at the time of the attack and the events leading up to it as alleged herein, was employed by the Cook County Sheriff as a correctional officer in the CCDOC.

15. Defendant SCACCIANOCE is sued in his individual capacity.

16. At all times mentioned in this Complaint, SCACCIANOCE acted under color of state law and within the scope of his employment with COOK COUNTY.

17. At all times relevant to this Complaint, SCACCIANOCE was cognizant and aware of the clearly established duty of protection he owed to pre-trial detainees as a correctional officer at the CCDOC, which duty is secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by federal law.

18. The Defendant COOK COUNTY is a governmental unit within the State of Illinois. At the time of the attack and the events leading up to it as alleged herein, COOK COUNTY was SCACCIANOCE's employer.

19. The Defendant COOK COUNTY is named for indemnification purposes only.

**EVENTS LEADING UP TO THE ATTACK ON WALKER**

20. Plaintiffs re-allege and incorporate the allegations contained in Paragraphs 1-19 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

21. On February 16, 2018, WALKER was in CCDOC custody in Division 9, Tier 2E ("Tier 2E").

22. On information and belief, the Cook County Sheriff has developed a policy for the CCDOC wherein two (2) inmates to a cell are to be allowed out one at a time to receive their commissary.

23. On February 16, 2018, the commissary arrived late; thereafter, in violation of the CCDOC established policy, the Defendant SCACCIANOCE released the entire bottom deck out of their cells and into the dayroom in order to pass out their commissary.

24. After receiving their commissary, the inmates from the bottom deck of Tier 2E were reluctant to return to their cells and began to engage in recreational activity in the dayroom, including playing cards and using the telephone, rather than locking back up in their cells.

25. In an effort to maintain order after deviating from CCDOC policy, Defendant SCACCIANOCE indicated that if the inmates from the bottom deck continued to refuse to return to their cells, the inmates on the top deck of Tier 2E would not receive their commissary that day.

26. After hearing this threat from Defendant SCACCIANOCE, WALKER told the inmates in the dayroom to return to their cells so he can receive his commissary.

27. In response, Kevin Eason ("Eason"), an inmate housed in the cell next to WALKER's, who also happened to one of SCACCIANOCE's workers and who was in the dayroom assisting in the passing out of commissary, shouted to WALKER, "shut your bitch ass up, stop doing the police job."

28. Thereafter, WALKER and Eason exchanged words. Eason demanded that once WALKER received his commissary, he give it to Eason.

29. WALKER responded by indicating he would not be giving Eason any of his commissary.

30. In response, Eason told WALKER that he and his cell mate, Brandon Kerby ("Kerby"), were going to "roll" WALKER ("roll" is a jail term meaning "jump" or "ambush").

31. Throughout the entirety of this conversation, SCACCIANOCE was standing on the deck of Tier 2E and could ostensibly hear the entire dialogue.

32. When the inmates housed on the bottom deck of Tier 2E were finally locked up, SCACCIANOCE released the inmates from the top deck of Tier 2E to receive their commissary goods.

33. Upon the opening of his cell, WALKER informed SCACCIANOCE that he believed there was going to be an altercation between himself and Eason and Kerby.

34. At that time, WALKER also made a verbal request to SCACCIANOCE to go into protective custody because he feared for his safety.

35. In response, SCACCIANOCE laughed, told WALKER that he believed he would be okay, and walked out of Tier 2E.

36. In an effort to defuse the situation, WALKER approached Eason and informed him he did not want any problems. In response, Eason told WALKER he better "get in line and give your shit up each week or me and my [cellmate] are going to roll your ass."

37. Whilst threatening WALKER in the manner above, Eason showed WALKER a knife.

38. After being threatened by Eason, WALKER proceeded to go into the interlock (the enclosed area between Tier 2E and Tier 2F in which commissary is handed out) and told SCACCIANOCE that Eason showed him a knife moments earlier while threatening to stab and beat WALKER if he failed to give them his commissary.

39. Again, while informing SCACCIANOCE of this threat and Eason's wielding of the knife, WALKER requested that he be put in protective custody because he feared for his safety.

40. In response, SCACCIANOCE dismissed WALKER's comments and told WALKER that he knew Eason and Kerby, that they were his workers, that WALKER did not have to worry about them doing anything to him, that WALKER did not need protective custody, and that WALKER would be okay.

41. After realizing the Defendant SCACCIANOCE would not put him into protective custody, WALKER took his commissary bag, put the bag on top of a table, and sat down within the correctional officers' line of sight.

42. Thereafter, WALKER went to the washroom to use the restroom.

43. At that time, WALKER was attacked by Eason and Kerby, the same two (2) inmates who had threatened WALKER multiple times earlier, showed WALKER a knife to him, demanded that WALKER give up his commissary goods, and who WALKER voiced concerns about regarding his safety to SCACCIANOCE.

44. WALKER was brutally attacked and sexually assaulted by Eason and Kerby.

45. As a result of the attack, WALKER suffered a multitude of injuries, including but not limited to blunt head trauma, fractures of the left medial orbital wall, fractures of the frontal process of the left maxilla and nasal bones, a mildly depressed right nasal bone fracture, a dislocated thumb, a medial rectus herniation, multiple lacerations to his upper lip and face, and was sexually assaulted.

46. As a result of his injuries, WALKER was also forced to have a tooth surgically removed.

47. The attack has produced ongoing symptoms for WALKER, including but not limited to vision disturbances, dizziness, and brain freezes that lead to memory lapse.

48. WALKER has been prescribed psychotropic drugs to deal with depression, anxiety, and sleep issues as a result of this attack. WALKER is also currently seeing a mental health professional.

## **COUNT I – FAILURE TO PROTECT**

49. WALKER realleges and incorporates the allegations set forth in paragraphs 1-48 as though fully restated herein.

50. As WALKER was incarcerated as a pre-trial detainee at the time of the attack, he had no access to forms of police protection and self-protection that he would have had access to outside the CCDOC. This includes the right to defend oneself when attacked. CCDOC detainees are not allowed to engage or fight other detainees under any circumstance. Consequently, WALKER was, by necessity, wholly dependent on COOK COUNTY employees and correctional officers at CCDOC, including SCACCIANOCE, for protection from attacks at the hands of other detainees.

51. While a prisoner's rights may be reasonably restricted by the fact of confinement and the needs of the penal institution, jail walls do not form a barrier separating pre-trial detainees from the protections of the Constitution.

52. The Supreme Court has ruled that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 205 (1993).

53. The Supreme Court has also ruled that the Eighth Amendment imposes a duty upon prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825 (1994).

54. Moreover, pretrial detainees stand in a unique position as they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Unlike

convicted prisoners, pretrial detainees cannot be punished at all, much less "maliciously and sadistically." Thus, the claims of pretrial detainees being held on probable cause arise under the Fourteenth Amendment's Due Process clause.

55. Claims brought by pretrial detainees under the Fourteenth Amendment Due Process Clause are therefore subject to an objective unreasonableness inquiry.

56. SCACCIANOCE had actual notice that WALKER's well-being and safety were in imminent danger prior to and at the time of the attack, and that WALKER faced substantial risk of serious harm in that, *inter alia*:

   i. Prior to the Attack, WALKER informed SCACCIANOCE that Eason and Kerby threatened to "roll" him if he did not give up his commissary goods; and

   ii. After informing SCACCIANOCE of the initial threat, Eason and Kerby once again threatened to "roll" WALKER and threatened him with a knife. WALKER again told the Defendant SCACCIANOCE of the threat and of the knife.

57. Despite SCACCIANOCE's awareness that WALKER was in imminent danger of an attack, SCACCIANOCE failed to take objectively reasonable measures to mitigate the risk of attack.

58. Furthermore, SCACCIANOCE was responsible for monitoring inmate conduct and providing security in and around the Tier 2E dayroom prior to and during the attack. SCACCIANOCE failed act in an objectively reasonable manner to discharge his duty to protect WALKER from attack by, *inter alia*:

   i. Failing to monitor the whereabouts of inmates that might pose a risk of attack on WALKER;

   ii. Failing to keep a careful watch on the dayroom area;

   iii. Failing to timely or reasonably intervene in the attack on WALKER, allowing WALKER to be attacked and sexually assaulted by the very men that WALKER identified to SCACCIANOCE as having threatened him; and

   iv. Failing to timely or reasonably respond to the scene of the attack on WALKER.

59. As a result of SCACCIANOCE's failure to act in an objectively reasonable manner to protect WALKER from a substantial risk of serious harm that he knew of and willfully disregarded, the attack was allowed to happen and resulted in significant physical, mental and emotional injuries to WALKER as alleged herein.

60. SCACCIANOCE's failure to discharge his duty to protect WALKER and failure to take objectively reasonable measure to abate, mitigate, or avoid the substantial risk of serious harm to WALKER are the direct and proximate cause of WALKER's injuries.

61. Because of SCACCIANOCE's failure to protect WALKER from the attack, WALKER's clearly established right to due process secured by the Fourteenth Amendment to the United States Constitution was violated.

62. By virtue of SCACCIANOCE's failure to protect WALKER, SCACCIANOCE was and is personally responsible for the violation of WALKER's rights.

63. As SCACCIANOCE's failure to discharge his duty to protect WALKER and further failure to take objectively reasonable measure to abate, mitigate or avoid the substantial risk of serious harm to WALKER are the direct and proximate cause of his injuries, WALKER seeks money damages from SCACCIANOCE to compensate him for the following:

   i. The severe and painful injuries to his face and body inflicted upon him during the attack;

   ii. The severe and painful injuries suffered as a result of bruising and contusions due to other blunt force trauma inflicted upon him during the attack;

   iii. The physical pain and suffering he has experienced as a result of the attack;

   iv. The mental and emotional pain, suffering and anguish he has experienced, continues to experience, and is reasonably certain to experience in the future as a result of the attack.

**WHEREFORE**, Plaintiff, LAURENCE WALKER, through his court appointed counsel, JOHNSON & KROL, LLC, respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

A. Find that the conduct of SCACCIANOCE, by failing to protect WALKER from harm at the hands of other detainees as alleged herein, violated WALKER's rights under the United States Constitution, including WALKER's rights under the Due Process Clause of the Fourteenth Amendment;

B. Award WALKER compensatory damages against SCACCIANOCE in an amount sufficient to compensate WALKER for the serious injuries suffered as a direct and proximate result of SCACCIANOCE's conduct and his failure to take objectively reasonable measures to abate, mitigate or avoid the substantial risk of serious harm to WALKER;

C. Find that COOK COUNTY has a duty to indemnify SCACCIANOCE for any damages awarded to WALKER as a result of any judgment entered in this matter;

D. Pursuant to 42 U.S.C. § 1988, award WALKER his reasonable attorneys' fees and expert fees;

E. Award WALKER his costs expended in the prosecution of this suit; and

F. Award WALKER such other and further relief as the Court deems just and proper.

Respectfully Submitted,

**LAURENCE WALKER**

/s/ Lucas J. Habeeb - 6329755
One of Plaintiffs' Attorneys

Lucas J. Habeeb
**JOHNSON & KROL, LLC**
311 South Wacker Drive, Suite 1050
Chicago, Illinois 60606
(312) 757-5472