UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURENCE WALKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VINCENT SCACCIANOCE and )<br>COUNTY OF COOK, )<br>)<br>Defendants. ) | No. 1:18-CV-05240<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In early 2018, Laurence Walker was a pretrial detainee at the Cook County Jail. He is suing Vincent Scaccianoce, a correctional officer, for failing to protect Walker from an attack by other detainees. That failure to protect, Walker alleges, violated his Fourteenth Amendment right to due process. R. 71, Second Am. Compl.[1] Cook County is named in the suit for indemnification purposes. The Defendants filed a request to limit discovery to the issue of administrative exhaustion; the request came rather late in the case, but the Court granted the motion given that it was potentially dispositive. R. 89. After completing this discovery, the Defendants filed a summary judgment motion for failure to exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e). R. 108, Defs.' Mot. For the reasons discussed in this Opinion, the Defendants' motion is denied, and an evidentiary hearing must be held on the exhaustion defense.

---

[1]This Court has subject matter jurisdiction over this federal civil rights lawsuit under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number.

## I. Background

In deciding the Defendants' motion for summary judgment, the Court views the evidence in the light most favorable to Walker, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Beginning in September 2016, and at all times relevant to this case, Laurence Walker was a pretrial detainee at the Cook County Jail. DSOF ¶¶ 1, 8.[2] Defendant Vincent Scaccianoce worked as a correctional officer at the jail. *Id.* ¶ 2. Although Walker was at the Cook County Jail throughout the events underlying this case, his specific location within the Jail varied from time to time; as it turns out, the timing of the housing assignments is important. From January 19 to February 16, 2018, he was housed in Division 9, Tier 2E. *Id.* ¶ 10. Then, from February 17 to March 5, 2018, he was housed in Division 8, Tier 3N. *Id.* ¶ 11. On March 5, 2018, Walker was transferred to Division 8, Tier 4A. *Id.* ¶ 12.

Because the issue at hand involves the Jail's administrative-remedy system, a look into that system is needed. Cook County Jail has an established grievance process to address detainee complaints about the conditions of their confinement. DSOF ¶ 13. But the parties in this case disagree about the details of the process and Walker's knowledge of it. *Id.* ¶¶ 13, 16–18, 20; Pl.'s Resp. DSOF ¶¶ 13, 16–18, 20. The grievance process is described in an inmate handbook. DSOF ¶ 18; R. 109-12, Defs.'

---

[2]Statements of Fact are identified as follows: "DSOF" for Defendants' Statement of Facts (R. 109); Pl.'s Resp. DSOF for Walker's response to Defendants' Statement of Facts and "PSOAF" for Walker's Statement of Additional Facts (filed together in R. 112); and "Defs.' Resp. PSOF" for Defendants' response to Walker's Statement of Additional Facts (R. 114).

Exh. L, Inmate Handbook. But Walker denies having been given a copy of the handbook when he arrived at the Jail in 2016, and does not remember if he was given one in an earlier period of pretrial detention. Pl.'s Resp. DSOF ¶ 18; R. 109-4, Defs.' Exh. D, Walker Dep. 27:1–24. Inmates must complete and submit any grievance on either an Inmate Grievance Form or a blank sheet of paper within 15 days of the incident that they wish to grieve. DSOF ¶ 15; Pl.'s Resp. DSOF ¶ 15. Correctional Rehabilitation Workers (Jail-based social workers generally referred to by the acronym CRWs), inmate services supervisors, or correctional supervisors then process the grievance. DSOF ¶ 21. In February and March 2018, Walker and other inmates had the option to place their grievances into a designated grievance repository box. DSOF ¶ 23; PSOAF ¶¶ 4–5.

The key sticking point on the exhaustion defense here is the parties' disagreement on when a grievance is "deemed filed." DSOF ¶ 20; Pl.'s Resp. DSOF ¶ 20. The Defendants assert that an inmate grievance "is deemed filed on the date it is received by a CRW, inmate services supervisor, or correctional supervisor." DSOF ¶ 20. Walker denies this, pointing out that the Defendants have not cited any written policy to this effect—indeed, they cite only deposition testimony—and if that indeed was the policy, there is no evidence that he or other detainees knew about it. Pl's. Resp. DSOF ¶ 20. The alternative, of course, is that a grievance is deemed filed once the inmate places it into the grievance box, regardless of when a Jail staff member actually reviews it. This disagreement will be discussed in depth later in the Analysis section.

3

If an inmate's grievance is denied, then the inmate must file an appeal within 15 days of receiving the denial. DSOF ¶ 15; Pl's. Resp. DSOF ¶ 15. An appeal is a necessary component of exhausting an inmate's administrative remedies. DSOF ¶ 16.[3] A grievance that is considered "non-compliant," however, cannot be appealed. DSOF ¶ 17; R. 109-8, Defs.' Exh. H, Mar. 2 Grievance at 2 ("Your grieved issue is not being processed due to the checked area(s) below. This grieved issue will not be assigned a control #, cannot be appealed and remedies cannot be exhausted").[4]

In the operative Complaint, Walker alleges that, on February 16, 2018, he told Defendant Scaccianoce that he (Walker) feared that he would shortly be attacked by fellow detainees who had threatened him. DSOF ¶ 30; Second Am. Compl. ¶¶ 30–34. He further alleges that Scaccianoce failed to take him seriously or respond appropriately to the threat. DSOF ¶ 30; Second Am. Compl. ¶¶ 35, 39–40. That same day,

---

[3]Walker denies that an appeal is required to exhaust administrative remedies on the grounds that the Inmate Handbook does not explicitly state that an appeal is necessary to exhaust administrative remedies. Pl's. Resp. ¶ 16. But the handbook does advise inmates of the timeline for appealing a grievance. Inmate Handbook at 22. And Walker has no answer to the Defendants' record citation showing that the grievance-denial form that inmates receive explicitly instructs: "To exhaust administrative remedies, grievance appeals must be made within 15 calendar days of the date the inmate received the response. An appeal must be filed in all circumstances in order to exhaust administrative remedies." R. 109-7, Defs'. Exh. G, Grievances at 3. Because he cites no record evidence to support his assertion that appeals are not necessary to exhaust remedies, Walker effectively admits that the appeals are, in fact, a necessary part of exhaustion.

[4]Walker denies that non-compliant grievances cannot be appealed, again by citing to the Inmate Handbook. Pl's Resp. DSOF ¶ 17. It is true that the defense cites only deposition testimony in support of this policy, and that the Handbook does not explicitly state that non-complaint grievances cannot be appealed (nor does it state that they *can* be appealed). DSOF ¶ 17. But attached to the Defendants' Statement of Material Fact is the Non-Compliant Grievance Response Form that Walker received and signed, which explicitly states that non-complaint grievances cannot be appealed. Mar. 2 Grievance at 2. This fact is thus established in the record, and Walker has not cited to evidence that contradicts it.

Walker was allegedly brutally attacked by the inmates who had threatened him. DSOF ¶ 31; Second Am. Compl. ¶¶ 43–47.

Walker submitted several grievances about the February 16 incident. The first grievance he filed was dated March 2, 2018. DSOF ¶ 18. Walker asserts that he placed that grievance in the grievance depository box on that date. PSOAF ¶ 9. The grievance form has boxes marked "Division" and "Living Unit" to reflect where the inmate is housed, and those boxes say that Walker was housed in Division 8, Tier 4A when he submitted the grievance. DSOF ¶ 37; Mar. 2 Grievance at 1. As previously mentioned, Walker admits that he was transferred to Division 8, Tier 4A on March 5, 2018—three days *after* the March 2 date on the form. DSOF ¶ 12; Pl's. Resp. DSOF ¶ 12. A CRW named Dominique Freeman received and signed Walker's grievance on March 6, 2018. DSOF ¶ 38. Freeman issued Walker a Non-Compliant Grievance Response Form, informing him that the grievance was non-compliant and could not be appealed because the grieved incident had taken place more than 15 days before. DSOF ¶ 40; Mar. 2 Grievance at 2. The Response Form was dated March 6, but Walker did not sign for receipt of it until March 23, 2018. DSOF ¶¶ 40–41; Pl's. Resp. DSOF ¶¶ 40–41. March 2, of course, was *less* than 15 days after February 16, but March 6 was *more* than 15 days after February 16.

Walker submitted two more grievances about the February 16 incident: one dated March 12, 2018, and the other dated August 26, 2018. DSOF ¶¶ 42, 46. Each was returned to him with a response declaring that it was untimely, and he acknowledged receiving both responses. *Id.* ¶¶ 44–45, 48, 50. Walker filed this lawsuit *pro se*

5

in July 2018, while still in detention at the Cook County Jail. DSOF ¶ 28; R. 1, Original Compl. At this point, the operative pleading is the Second Amended Complaint (filed by a recruited *pro bono* counsel). R. 71. With the Court's authorization, before the close of discovery on the merits, the Defendants have filed their motion for summary judgment based on failure to exhaust administrative remedies. R. 108.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the

6

adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

### A. Overview of PLRA Exhaustion

The Prison Litigation Reform Act (often referred to as the PLRA) prohibits prisoners and detainees from filing suit in federal court to challenge prison or jail conditions "until such administrative remedies as are available are exhausted." 42 U.S.C § 1997e(a). When contested, exhaustion is a threshold issue. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The contention that a prisoner has failed to exhaust administrative remedies is an affirmative defense that the defense has the burden of proving. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

A detainee must take all the steps required by the prison's grievance system in order to exhaust his administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). In other words, the PLRA "requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Inmates must meet appropriate deadlines and follow "other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91. The only limitation to the exhaustion requirement is baked into the statute: remedies must be "available." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The issue in this case is whether the Cook County Jail's grievance process was fully available to Walker.

7

## B. Availability

Broadly speaking, there are at least three types of circumstances when a prison or jail's administrative remedy can be considered unavailable. *Ross*, 578 U.S. at 643. First, if an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"—then it is not available to inmates. *Id*. at 643. Second, if administrative rules are so opaque or confusing that "no reasonable prisoner can use them," then they are not considered available. *Id.* at 644 (cleaned up). For vagueness to render a remedy unavailable, however, genuine murkiness is required; if administrative rules simply have multiple reasonable interpretations, then "Congress has determined that the inmate should err on the side of exhaustion." *Id*. Third, if prison administrators or staff "thwart inmates from taking advantage of a grievance process[,]" then the process is not available. *Id*. This can happen through "affirmative misconduct," such as refusing to provide or respond to grievance forms or threatening inmates with negative consequences for grieving. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see also Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir.2004) (grievance process not available when correctional staff refused to provide grievance forms to plaintiff); *Kaba v. Stepp*, 458 F.3d 678, 684–86 (7th Cir. 2006) (grievance process not available to inmate who alleged that prison officials would not provide him with grievance forms unless he "pre-disclosed the topic of the grievance" and it was not about the prison officials). Administrators can also relegate a remedy into the depths of unavailability by simply failing to inform inmates of grievance processes, leaving inmates ignorant of the

remedy. *Hernandez*, 814 F.3d at 842. But ignorance of the remedy is not always an excuse for failing to exhaust remedies: "The PLRA does not excuse a failure to exhaust based on a prisoner's ignorance of administrative remedies, so long as the prison has taken reasonable steps to inform the inmates about the required procedures." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018).

Here, it is beyond dispute that Walker did not complete the administrative-remedy steps established by the Cook County Jail. The first grievance that he filed, which he dated March 2 and which a CRW processed (or dated as having processed) on March 6, was returned to him as a non-compliant grievance, which cannot be appealed. DSOF ¶¶ 17, 36, 38, 40.[5] At issue is the *reason* for Walker's failure to complete the administrative steps. Walker effectively blames the supposed failure on the purported unavailability of the grievance process, although he does not always frame it in those terms. The dispute boils down to two questions. First, did Walker in *fact* place his grievance in a designated grievance box on March 2, 2018? And second, if he did, does that mean the grievance should have been deemed timely filed and therefore processed as a grievance, rather than a non-complaint grievance?

On the current record, there is a genuine issue of material fact on both questions, which means that the defense has not met its burden and summary judgment

---

[5]Walker filed two more grievances, on March 12 and August 26, 2018, which he was told were untimely, but he does not attempt to argue now that either of those grievances was timely filed. DSOF ¶¶ 42–48; Pl's. Resp. DSOF ¶¶ 42–48. They clearly were not. As the Seventh Circuit tells us, "[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited." *Kaba*, 458 F.3d at 684.

9

cannot be granted. The Court must hold an evidentiary hearing to resolve the factual dispute and determine whether Walker exhausted his administrative remedies. *See Pavey*, 544 F.3d at 741–42.

### 1. Did Walker Deposit the Grievance on March 2?

Walker asserts that he "submitted his grievance dated March 2, 2018 by depositing the grievance in a grievance box" on that date. PSOAF ¶ 9. He testified to this effect in his deposition. Walker Dep. 31:21–23; 54:18–55:11. Naturally, Walker has personal knowledge about when he physically placed the grievance in the box, so the Court must credit his statement. It must be said, however, that the rest of the evidentiary compiled record so far suggests that Walker will have a *very* hard time proving this fact. He admits that, on March 2, he was *not* living in the housing unit that he wrote on his grievance form, and he has offered no evidence or testimony to explain this discrepancy—other than his own word, which the Court must credit right now. Pl.'s Resp. DSOF ¶ 11. At the summary judgment stage, the Court does not weigh the credibility of admissible evidence. *Omnicare, Inc.*, 629 F.3d at 704. This is especially true of the testimony of a party of a fact on which he has personal knowledge. Walker has thus established a dispute of material fact on whether he placed his grievance in the grievance box on March 2.

### 2. Is a Grievance Considered Filed When Put in the Box?

Assuming Walker can prove that he did place the grievance in a grievance box on March 2, 2018, he will then need to establish that, under Cook County Jail procedures, the deposit of the grievance in the box is the pertinent filing date of the

grievance. If he can do that, then the grievance was timely filed within the 15-day deadline to grieve the February 16 incident. And if the grievance was timely filed, then the Jail made a mistake by returning it to him as a non-compliant grievance, which effectively made the grievance remedy unavailable to him. Although Walker faces an uphill battle in establishing that he deposited the grievance on March 2, if he can do so, it will be the Defendants who face an unfavorable record in trying to show that this grievance was untimely. There still is a genuine question of material fact as to whether the grievance must be deemed as filed when placed in the box, but the evidence tips heavily in Walker's favor.

  The evidence to support the defense position—that a grievance is deemed filed only when *received* by a CRW—is sparse. The Defendants cite to short excerpts of deposition testimony by John Mueller (the director of inmate services) and Dominique Freeman, the CRW who processed Walker's first grievance. DSOF ¶ 20; R. 109-6, Def's. Exh. F, Mueller Dep. at 24:13–19; R. 109-5, Def's. Exh. E, Freeman Dep. at 76:7–12. But neither Mueller nor Freeman testified that inmates are instructed that their grievance is only deemed filed when a Jail staffer reviews it. Nor is there any evidence that Walker had any way to know of this supposed policy. Meanwhile, none of the Jail's *written* policies in the record, nor the Inmate Handbook, suggests that a grievance is only filed or submitted once reviewed by a staff member. PSOAF ¶¶ 1–7. Meanwhile, going the other way, several Jail policies allow or allowed for inmates to submit their grievances by placing them in a locked grievance depository box in

11

their housing unit. *Id.* ¶¶ 1–5.[6] Also, Walker testified that he put his grievance in the box at the direction of a correctional officer. Walker Dep. at 31:19–23.

It is difficult to imagine how the defense might prove that, first, the Jail really had a policy of deeming grievances filed only when reviewed by a CRW; and second, if the policy existed, that Walker knew or should have known about it. If the Jail were genuinely going to adopt this policy across the board and enforce it against all detainees, the Court would expect the record to reflect a much broader effort to educate detainees about the policy, which has potentially deadline-dispositive effects exemplified by this case. If inmates have access to a grievance depository box, then presumably they will use it, and they will logically (and fairly) assume that when they place their grievances in the box, they are filing them. Based on the Inmate Handbook in the record, an inmate would have no way to know that by placing his grievance in the designated box the day *before* his filing deadline, he risks having his grievance considered untimely—especially if, as in this case, it is a Friday before a holiday weekend, when CRWs will not visit the Jail. PSOAF ¶ 10. Indeed, the Jail's alleged

---

[6]Curiously, some of the Cook County Jail Policies that both parties cite were apparently not in effect on February 16, 2018. DSOF ¶ 14, Pl's. Resp. DSOF ¶ 14. Walker asserts in his response to the Defendants' Statement of Material Fact that "Defendants have failed to identify with specificity the operative policy in effect during the relevant time period." Pl.'s Resp. DSOF ¶ 14. Even the Inmate Handbook is the version that was in effect through February 1, 2007. PSOAF ¶ 6. Although the Defendants assert that the "only change to the grievance procedure in February of 2017" was the extension by one day to the grievance filing deadline, the cited deposition excerpt does not support this proposition. Defs.' Resp. PSOAF ¶ 6 (citing Mueller Dep. at 29:19–21, in which he mentions the change, but does not indicate it was the *only* change). But at least two policies, Policies 701 and 808, state that an inmate can deposit a grievance in a grievance repository box, and nobody seems to claim those policies were not in effect at the relevant times. PSOAF ¶¶ 4, 5; Defs.' Resp. PSOAF ¶¶ 4, 5.

policy, as described by the Defendants, effectively shortens the timeframe for inmates to file grievances.

Viewing the record in the light most favorable to Walker, there was no way for him to know that his grievance would only be considered filed when it was reviewed by a CRW, rather than when he placed it in the grievance box—indeed, the only-filed-when-reviewed policy might not really exist. This opens the door to two of the three theories of unavailability. If the Jail really intended to execute its stated policy, then the record suggests that their execution of it was so confusing or vague as to make the grievance process unavailable to Walker and others who submitted their grievances near the deadline, not realizing it might not be considered filed for several more days. *Ross*, 578 U.S. at 643–44. Alternatively, if the Jail completely failed to inform Walker of the policy, then this was a way of blocking Walker's access to the administrative remedy by hiding it. *Hernandez*, 814 F.3d at 842. Finally, if the Jail did not really consider grievances timely filed only when received by the CRW, then rejecting Walker's timely filed grievance form may have amounted to "affirmative misconduct," thwarting his attempt to access the administrative process. *Id.*; *Dale,* 376 F.3d at 656; *Kaba,* 458 F.3d at 684. On any of these theories, the administrative remedy to which Walker was entitled would not have been made available to him.

### C. Equitable Relief

Walker argues in the alternative that, even if the Court agrees with the Defendants' position that a grievance is "submitted" when a CRW reviews and signs it, "justice requires" the Court to rule in Walker's favor. Pl.'s Resp. at 8. But there is no

escape hatch from the PLRA exhaustion requirement on equitable grounds. Walker's argument amounts to a request for a special exception from the PLRA. The Supreme Court has been clear that there is no "special circumstances" carveout to the exhaustion requirement: "The court below adopted an unwritten 'special circumstances' exception to [42 U.S.C. § 1997e(a)], permitting some prisoners to pursue litigation even when they have failed to exhaust available administrative remedies. Today, we reject that freewheeling approach to exhaustion as inconsistent with the PLRA." *Ross*, 578 U.S. at 635. Walker's arguments in favor of denying the motion for summary judgment focus on distinguishing his case from other cases where inmates filed grievances much later than he did on the Defendants' facts. Pl.'s Resp. at 8–10. But that has nothing to do with whether or not the administrative process was available to Walker, which is the *only* potential exception to the exhaustion requirement. As already discussed, however, Walker has indeed established a question of material fact as to whether the Jails' remedies were really available to him.

## IV. Conclusion

For the reasons discussed in this Opinion, the Defendants' motion for summary judgment is denied. The Court must hold a hearing to resolve the disputed issues of material fact on the issue of exhaustion. The Court will set a phone status hearing to discuss the hearing logistics. The Court does encourage Walker to confer with recruited counsel about the March 2 deposit date (though it is possible that the Court

is missing something) and to discuss the possibility of a reasonable settlement with the defense.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 3, 2021